**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA TERESA SCOTT, | ) CV 08-4467 RSWL (FMOx) |
| Plaintiff, | ) |
| v. | ) **ORDER GRANTING** |
| | ) **DEFENDANT'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| SUBCONTRACTING CONCEPTS, | ) |
| INC. AND DOES 1-10, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

I.   Background

     Plaintiff Maria Teresa Scott ("Plaintiff") began
performing services as a delivery driver with a company
named California Overnight in Inglewood, California
around June 2003.  Plaintiff served as a utility driver
who performed replacement services for other drivers
who were not able to handle their routes.  In or around
2005, Plaintiff switched from being a utility driver to
having a fixed route where she would handle deliveries
in a specified area.  In or around September 2006,

1

1  Plaintiff switched her route from Inglewood to Burbank.

2      Plaintiff stopped performing services for

3  California Overnight around October 2007.  A couple of

4  months later, California Overnight offered to allow her

5  to resume her services as an independent contractor.

6  She declined this offer.

7      Defendant Subcontracting Concepts, Inc.

8  ("Defendant" or "SCI") is a third party administrator

9  that provides services in connection with a client's

10 use of independent contractors.  Contractually, SCI

11 performs administrative services for California

12 Overnight, including the processing of settlement

13 payment checks and 1099 forms for the drivers who

14 perform delivery services.  Information from

15 Subcontracting Concepts, Inc.'s website describes the

16 company as a "Primary General Contractor" which

17 contracts with each driver individually and provides

18 payee services associated with the subcontractors.  SCI

19 "administers, reviews, and tracks the 1099 reporting

20 responsibilities for the settlement payments made to

21 the Independent Contractor."  Services SCI performs

22 include "data processing systems, administrative

23 support, and legal protection delivered by SCI to the

24 drivers as well as to the Courier Company."

25     Plaintiff filed her Complaint against

26 Subcontracting Concepts in Los Angeles Superior Court

27 on May 15, 2008.  The Complaint was served on Defendant

28 on June 10, 2008, and Defendant timely filed a Notice

of Removal on July 8, 2008.  Notably, Plaintiff only
brought claims against Subcontracting Concepts and did
not name California Overnight as a party defendant.

The Complaint alleges eleven causes of action:

1.   Violation of Federal Wage & Hour Laws, Fair
     Labor Standards Act, 29 U.S.C. § 201 et seq.

2.   Willful Violation of Federal Wage & Hour Laws,
     Fair Labor Standards Act, 29 U.S.C. § 207

3.   Unpaid Minimum Wages Under California Law, Cal.
     Labor Code §§ 1197 et seq.

4.   Failure to Pay Compensation for All Hours
     Worked, Cal. Labor Code §§ 1198 et seq.

5.   Unlawful Discrimination, FEHA, Cal. Gov. Code §
     12940

6.   Termination in Violation of Public Policy

7.   Sexual Harassment, Gov. Code § 12940 et seq.

8.   Unlawful Retaliation, Gov. Code § 12940 et seq.

9.   Failure to Prevent Sexual Harassment, Gov. Code
     § 12940 et seq.

10.  Labor Code Private Attorneys General Act of
     2004, Cal. Labor Code §§ 2698-2699.5

11.  Unfair Competition, UCL, Cal. Bus. & Prof. Code
     § 17200 et seq.

Defendant answered the Complaint on July 14, 2009.
Although Defendant argues that the claims should now be
dismissed on summary judgment, Defendant did not bring
a motion to dismiss at any time during this litigation.

Defendant filed this Motion for Summary Judgment on

3

May 1, 2009.  Defendant moves for summary judgment on two grounds: (1) all the wrongful acts Plaintiff alleges were not committed by Defendant and/or its agents; and (2) even if the Court declines to dismiss all of Plaintiff's claims, Defendant is entitled to summary adjudication on the claims that require an employer-employee relationship, because there was no such relationship between Defendant and Plaintiff.

The Court entertained argument on this Motion on July 14, 2009.

II. <u>Analysis</u>

    A.  <u>Legal Standard - Summary Judgment</u>

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in a light most favorable to the opposing party.  <u>Diaz v. American Tel. & Tel.</u>, 752 F.2d 1356, 1358 n.1 (9th Cir. 1985).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

4

The non-moving party, on the other hand, is required by Fed. R. Civ. P. 56(e) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324. Conclusory allegations unsupported by factual allegations, however, are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (citing Marks v. Department of Justice, 578 F.2d 261, 263 (9th Cir. 1978)). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [opposing party] on the evidence presented." Anderson, 477 U.S. at 255.

The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. In fact, the moving party need not produce any evidence at all on those matters. Celotex, 477 U.S. 317, 106 S. Ct. 2548, 2554 (1986).

In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. 242. Upon a showing that there is no genuine issue of material fact as to a particular claim or defense, the court may grant summary judgment in the party's favor "upon all or any part thereof." Fed. R. Civ. P. 56(b).

1          B.   <u>Actions by Defendant SCI</u>

2          Defendant contends that there is no triable issue

3    of fact concerning who committed the actions complained

4    of in the Complaint.  Defendant argues that the alleged

5    wrongful acts were not committed by SCI or its agents,

6    but rather were committed by third-party non-

7    defendants.

8          Defendant points to evidence showing that Plaintiff

9    herself has admitted to the following: (1) she was

10   unaware of anything SCI did other than processing

11   settlement checks for her and the other drivers

12   (Defendant's Statement of Uncontroverted Material Facts

13   ("SUMF") 14); (2) she never met anyone who worked for

14   Defendant SCI (SUMF 15); (3) she never communicated

15   with anyone at SCI regarding her delivery services

16   (SUMF 16); and (4) she only communicated with SCI on

17   one occasion regarding a letter she needed for an

18   immigration matter (SUMF 18).

19              1.   First Cause of Action for Violation of

20                   Federal Wage and Hour Laws, 29 U.S.C. §

21                   201; Second Cause of Action for Willful

22                   Violation of Federal Wage and Hour Laws,

23                   29 U.S.C. § 207; Third Cause of Action for

24                   Unpaid Minimum Wages Under California Law,

25                   Cal. Labor Code § 1197; and Fourth Cause

26                   of Action for Failure to Pay Compensation

27                   for All Hours Worked

28         Plaintiff's first, second, third, and fourth causes

of action are predicated upon the non-payment of wages and compensation. However, Plaintiff has not provided evidence that Defendant was responsible for determination of payment of wages. Defendant has provided evidence that it was not responsible for determination of wages or compensation to be provided to drivers. Rather, SCI simply took the amounts given to it by its clients and remitted those amounts to the drivers (SUMF 20). Plaintiff's only response to this statement of fact is "Irrelevant" (Plaintiff's Statement of Genuine Issues 20). Plaintiff does not submit evidence that Defendant's role was anything more than an administrative process whereby payments were processed in amounts set and given by clients, including California Overnight. In fact, Plaintiff herself has stated that California Overnight, not SCI, determined the amount of compensation owed to drivers through the settlement payments (SUMF 21).

As such, Plaintiff has not provided any evidence to create a genuine issue of material fact to show that the actions of Defendant SCI or its agents were responsible for the alleged wrongful actions constituting the first four causes of action regarding compensation and wages. Defendant is therefore entitled to summary judgment on these claims.[1]

_____

[1] Plaintiff also argues that an employer-employee relationship existed with Defendant SCI and this could

2.  Fifth Cause of Action for Unlawful

Discrimination, Cal. Gov't Code § 12940

Plaintiff's fifth cause of action for unlawful discrimination under California law is predicated upon her termination from employment.  Plaintiff's response to Special Interrogatory 15 lays out the basis of this allegation:

Q:  State all facts regarding any incident, conduct or statement that YOU believe constitutes the discrimination YOU allegedly suffered while YOU were performing services for Defendant.

A:  When Plaintiff decided to ask for transfer to the office in Burbank, Ballard sent emails to

---

form the basis of a claim under these causes of action if true.  As proof of this employment relationship, Plaintiff points to various admissions by Defendant that it had "contractual relations" with Plaintiff. While these contractual relations may be a basis for a breach of contract claim, they likely are not a basis for a wage and hour claim under the Fair Labor Standards Act because of the requirement that there be an employer-employee relationship.  This argument regarding an employer-employee relationship is discussed below.

T. Bourne, and consequently she was fired.
Plaintiff felt discriminated against because
even though she knew how to do a well job
[sic], she had worked for Defendant for about 4
years, they fired her because of Ballad's [sic]
comments.

It is undisputed that both John Ballard and Tony
Bourne were never employees or agents of Defendant SCI
(Plaintiff's Statement of Genuine Issues 27-28).
Ballard is allegedly a former employee of California
Overnight and Bourne is a current employee.  Plaintiff
fails to provide any evidence that connects these
allegedly wrongful actions to Defendant SCI.

       3.   Sixth Cause of Action for Termination in
Violation of Public Policy; Eighth Cause
of Action for Unlawful Retaliation, Cal.
Gov't Code § 12940

Plaintiff's claims for unlawful termination and
retaliation in violation of public policy and
California law are predicated upon actions taken by
California Overnight, and not Defendant SCI.  During
her deposition, Plaintiff admitted as much:

Q:  And why did you stop working for California
Overnight in Burbank?

A:  They fired me.

Q:  Explain to me what happened.  Did somebody tell
you something?

A:  I was called to the office with Tony Bourne,

9

the general manager, and my master, who was
Ernesto Herrera, and I was only told that they
could not give me any work anymore.  They did
not give me any note or anything.  It was only
verbal.  And that's it.

Deposition of Maria Teresa Scott 48:6-15.  Plaintiff
also was asked through interrogatories to state "all
facts regarding any incident, conduct or statement that
YOU believe constitutes retaliation YOU allegedly
suffered while YOU were performing services for
Defendant."  In response, Plaintiff stated "Plaintiff
was fired as a result of comments made by B. Ballad
[sic] to T. Bourne, and not due to any work related
reasons."  As noted above, both Ballard and Bourne were
employees of California Overnight and not Defendant
SCI.

Therefore, Plaintiff's claims involve an alleged
termination by non-Defendant California Overnight and
allege actions taken by two individuals whom she does
not connect with SCI.  Therefore, the actions should
not be imputed to Defendant and summary judgment should
be granted on these claims.

    4.   Seventh Cause of Action for Sexual
Harassment, Cal. Gov't Code § 12940; Ninth
Cause of Action for Failure to Prevent
Sexual Harassment, Cal. Gov't Code § 12940

Plaintiff's claims alleging sexual harassment are
also predicated upon the actions of a non-Defendant,

Mr. Ballard (Responses to Interrogatories 7,10,13).
Plaintiff was asked to "identify all employees of
Defendant who sexually harassed YOU, as alleged in
Paragraph 68 of the COMPLAINT," to which she responded
"John Ballard."

Plaintiff also claims failure to prevent sexual
harassment, a claim which is tethered to her sexual
harassment claim.  This claim alleges that "there was
improper supervision of the management personnel who
harassed her, and that said management personnel was
not given adequate sexual harassment training" (SUMF
34).  Again, Plaintiff has not made the required
connection between the actor, John Ballard, and
Defendant SCI.  It is undisputed that John Ballard
never worked for SCI.  Therefore, summary judgment
should be granted as to these claims for sexual
harassment and failure to prevent sexual harassment
against Defendant SCI.

> 5.  Tenth Cause of Action for Labor Code
>     Private Attorney General Act of 2004, Cal.
>     Labor Code §§2698-2699.5; Eleventh Cause
>     of Action for Unfair Competition, Cal.
>     Bus. & Prof. Code § 17200

Plaintiff's tenth and eleventh causes of action
under the Private Attorney General Act and the Unfair
Competition Laws are attached to the above claimed
violations of federal and state law.  Therefore, these
claims either succeed or fail with the success or

failure of the first nine causes of action. Because
summary judgment is granted on the above claims,
summary judgment is appropriate for these claims as
well.

As laid out above, the actions complained of do not
seem to relate to Defendant SCI. Rather, the actions
complained of are linked to non-defendant California
Overnight. It is unclear why Plaintiff brought claims
against SCI and not California Overnight. The facts as
pled in the Complaint and as laid out by the parties in
the briefing on this Motion are bare as to the
relationships between Defendant SCI, Plaintiff Scott,
and California Overnight. However, as pled and
briefed, Plaintiff has not made an adequate connection
between the actions complained of and Defendant SCI.
This deficiency is not addressed by Plaintiff in her
Opposition. Instead Plaintiff focuses on the argument
over whether Plaintiff was an employee or an
independent contractor.

   C.  Employment Relationship

Defendant argues that if the above analysis is not
sufficient to grant summary judgment, summary
adjudication is appropriate on Plaintiff's claims that
require an employment relationship. Plaintiff does not
deny that her First (Federal Wage and Hour), Second
(Willful Federal Wage and Hour), Third (Unpaid Minimum
Wage), Fourth (Failure to Compensate), Fifth
(Discrimination), Sixth (Termination), and Tenth

(Private Attorney General) Causes of Action require an employment relationship. Rather, Plaintiff contends that the requisite employment relationship was present. Defendant does dispute that her Eleventh Cause of Action (Unfair Competition) requires an employment relationship.

Defendant argues that although there were contractual relations between itself and Plaintiff, there was no employment relationship because Plaintiff was, at most, an independent contractor.

### 1. Legal Standard - Employment Relationship

The Fair Labor Standards Act ("FLSA") defines the terms "employee" and "employer." Under the Act, "employee means any individual employed by an employer." FLSA, 29 U.S.C. § 203(e)(1). The term "employer includes any person acting directly or indirectly in the interest of any employer in relation to an employee . . ." 29 U.S.C. § 203(d).

Under the Fair Labor Standards Act ("FLSA"), courts adopt an expansive interpretation of the terms "employer" and "employee." Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754 (9th Cir. 1979). "The FLSA's definition of 'employee' has been called the 'broadest definition that has ever been included in any one act.'" Nash v. Resources, Inc., 982 F. Supp 1427, 1433 (D. Or. 1997); Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947). Therefore, the common law concepts of "employee" and "independent

contractor" are not conclusive determinations under the
FLSA.  _Real_, 603 F.2d at 754.

Courts have identified various factors which can be
helpful in distinguishing an independent contractor
from an employee.  These factors include:

      1.    The degree of the alleged employer's right
             to control the manner in which the work is
             to be performed;
      2.    The alleged employee's opportunity for
             profit or loss depending upon his
             managerial skills;
      3.    The alleged employee's investment in
             equipment or materials required for his
             task, or his employment of helpers;
      4.    Whether the service rendered requires a
             special skill;
      5.    The degree of permanence of the working
             relationship; and
      6.    Whether the service rendered is an
             integral part of the alleged employer's
             business.

_Real v. Driscoll Strawberry Associates, Inc._, 603 F.2d
748, 754 (9th Cir. 1979) (finding that the district
court erred in finding that plaintiff did not raise a
genuine issue of material fact as to whether plaintiff
was an employee under the FLSA).  This test is
generally described as an "economic realities test"
which focuses on the realities of an arrangement rather

than the "subjective intent of the parties to a labor contract." Id. at 755.

### 2. Estoppel

Plaintiff first contends that Defendant should be estopped from denying an employment relationship because of prior statements made by Defendant in papers filed with this Court and elsewhere.

Before bringing this lawsuit, Plaintiff filed claims with both the California Department of Fair Employment & Housing and the California Labor & Workforce Development Agency against Defendant SCI as her employer. SCI did not respond to either of these complaints. Plaintiff argues that by not responding to these claims, Defendant essentially admits that it was in fact Plaintiff's employer, and therefore should be estopped from denying such an allegation at this time.

In addition, Plaintiff points to assertions made in Defendant's Notice of Removal. The Notice asserts that "In the instant action, all of the claims in Plaintiff's Complaint relate to Plaintiff's contractual relationship with Defendant where by she agreed to perform services and did in fact perform services for Defendant." Notice ¶ 11. Also, Defendant's Chief Operating Officer, Robert Slack, declared at the time of removal that "Defendant contracted with Plaintiff Maria Teresa Scott for the performance of delivery services for approximately nine months in 2007." Slack Decl. to Notice of Removal ¶ 9.

Plaintiff argues that Defendant is for the first time denying an employment relationship in this Motion. Because discovery has concluded and the case has evolved to summary judgment, Plaintiff claims prejudice in permitting Defendant to now deny that it had an employment relationship with Plaintiff. Plaintiff argues it reasonably relied on these claims to its detriment by not adding California overnight as a Doe Defendant.

Plaintiff's argument is unpersuasive. First, this is not the first denial of an employment relationship. In Defendant's Answer, Defendant raises numerous affirmative defenses, including "Defendant contends that, at all times relevant to the Complaint, Plaintiff was not and is not an employee of Defendant, and thus the Complaint does not state any causes of action against Defendant." Answer ¶ 111. Defendant also claims as a separate affirmative defense, "Defendant contends that Plaintiff was an independent contractor of Defendant and as such is not entitled to any relief for the claims she has brought against Defendant in the Complaint." Answer ¶ 112. Furthermore, there are numerous mentions of California Overnight in depositions, responses to interrogatories, and in Plaintiff's general knowledge prior to bringing this lawsuit. She therefore cannot genuinely claim that she did not know that California Overnight may have been a proper defendant in this action.

Second, these assertions do not amount to admission of an employment relationship. The statements made by Defendant in court documents and in declarations amount to an admission that Defendant contracted with Plaintiff for performance of services. These statements are consistent with an independent contractor relationship, and do no necessarily admit a statutory employment relationship.

As to the claims filed with the California agencies prior to filing this claim, Defendant did not submit *any* response to these claims, and was under no obligation to do so. Had Defendant submitted a response and failed to deny an employment relationship, this argument may have had some weight. However, Defendant should not be estopped from denying an employment relationship because it failed to submit a response when it was under no obligation to do so. Therefore, Plaintiff's estoppel argument is not persuasive, and an analysis of whether an employment relationship existed is warranted.

3. State Court Adjudication

Defendant argues that the Court need not consider the factors for determining an employment relationship because Plaintiff's status as an independent contractor has already been determined as a matter of law. In Christler v. Express Messenger Systems, Inc., 171 Cal. App. 4th 72 (2009), the California Court of Appeal affirmed a trial court's judgment pursuant to a jury

determination that class members were properly
classified as independent contractors of California
Overnight, rather than employees.  The certified class
in the action included all delivery drivers for Express
Messenger Systems, Inc., d/b/a California Overnight,
from November 30, 2002 through March 28, 2005.
Plaintiff falls within this defined class.

Plaintiff argues that this state court case shows
that a jury should determine the issue, rather than the
Court on summary judgment.  This argument is somewhat
supported by the case itself which notes that "the
determination of employee or independent-contractor
status is one of fact."  Cristler, 171 Cal. App 4th at
78.  The California Court of Appeal also noted, in a
footnote:

> Cristler emphasizes throughout its briefing that
> *other cases* addressing the proper classification of
> package delivery drivers have resulted in finding
> that the drivers were employees, rather than
> independent contractors . . . The simple answer to
> these references is that these cases concerned
> different circumstances presented to a different
> finder of fact.  Indeed, even if the facts of this
> case were *identical* to those in cases Cristler
> cites (and they are not), we would not be
> authorized to overrule the determination of the
> jury . . .

Cristler, 171 Cal. App. 4th 78, n.2 (emphasis in

original).

Furthermore, the <u>Cristler</u> case dealt with a somewhat different issue than the one before this Court. The issue in <u>Cristler</u> was whether the drivers were independent contractors or employees *of California Overnight*. The issue before this Court is whether a driver is an independent contractor or employee *of SCI*.

Lastly, <u>Cristler</u> was a state court case to determine whether the class of drivers were employees under the California Labor Code. It was a question of California Law determined by the California courts. In this case, on the other hand, part of the issue is whether a driver should be considered an employee under Federal law. These are distinct questions and should be determined separately. Therefore, although the California Court of Appeal has held that the class of California Overnight drivers are independent contractors under state law, this ruling is not res judicata on this Court for Plaintiff's claims arising under Federal law.

    4.  Factors

As noted above, some relevant factors to consider in determining an employment relationship include:

    1.  The degree of the alleged employer's right to control the manner in which the work is to be permitted;

    2.  The alleged employee's opportunity for profit or loss depending upon his managerial skills;

19

3.  The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

4.  Whether the service rendered requires a special skill;

5.  The degree of permanence of the working relationship; and

6.  Whether the service rendered is an integral part of the alleged employer's business.

Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754 (9th Cir. 1979).  The most probative factor is the right and ability to control the manner of work.  NLRB v. Friendly Cab Co., 512 F.3d 1090, 1096-97 (9th Cir. 2008).

Defendant points out that Plaintiff herself has claimed that she was employed by California Overnight, and claims that the "undisputed facts show that SCI did not exercise any control over the courier services that Plaintiff performed" (Motion at 14).  Defendant provides references to Plaintiff's deposition and responses to interrogatories that show she believed she was employed by California Overnight, and had very little contact with Defendant SCI.  She has stated that she assumed SCI only dealt with the settlement payments and was unaware of any other matters under SCI's control.  In her deposition, she stated:

Q:  Were you familiar with a company called SubContracting Concepts, Inc.?

```
 1    A:   Yes.  They were the ones who made the checks
 2         for us.
 3    Q:   Other than making out the checks, did
 4         SubContracting Concepts, Inc., do anything else
 5         for you?
 6    A:   No, as far as I know.
 7  Scott Deposition 127:15-21.  The Deposition continues:
 8    Q:   Did you ever have any communications with
 9         anyone at SubContracting Concepts, Inc., about
10         deliveries?
11    A:   No.
12    Q:   Did anyone from SubContracting Concepts, Inc.,
13         ever communicate with you about when you should
14         come to work or where you should make
15         deliveries?
16    A:   No.  The only people who contacted me was the
17         people in the office where I worked.  So I knew
18         the people who would be calling me.
19    Q:   They were people from California Overnight?
20    A:   Yes, the office where I assisted every day.  I
21         never met personally anybody from the office of
22         SCI.
23    Q:   And the contacts you had with persons in the
24         office at California Overnight, were those
25         people you identified during the first day of
26         your deposition, people such as Maurice
27         Johnson, the dispatcher in Inglewood, John
28         Ballard, Ernesto Herrera, Jose Rios, people
```

21

1          like that?

2     A:   Yes, and also other dispatchers.

3     Q:   At California Overnight?

4     A:   Yes.

5     Q:   Did you ever have any discussions or

6          negotiations with anyone at SubContracting

7          Concepts, Inc., about the money you made for

8          doing deliveries?

9     A:   The money that I was making, it was not

10         negotiable.  They put the price.  I didn't.

11    Q:   Who put the price? California Overnight?

12    A:   Of course.

13 Scot Declaration 129:14-130:18.

14        However, Plaintiff now attempts to enter into the

15 record on summary judgment evidence which is

16 substantially contradictory.  Despite these previous

17 assertions made by Plaintiff at the time of her

18 deposition, she has now submitted a Declaration with

19 her Opposition which attempts to establish the facts

20 necessary to show an employment relationship under the

21 "economic realities test" and the factors noted above.

22 In her Declaration, Plaintiff attests to the following:

23    1.   With respect to control of the details and

24         result of my work, I did not set my own

25         schedule.  I was required by SCI to be at work

26         every morning at 6:00 a.m. in the Inglewood

27         location.  In the Burbank location I was

28         required to show up at 5:15 in the morning . .

. I was not allowed to change the number of
hours I worked.  My progress in making
deliveries was tracked by SCI through the
digital scanning process . . . I was not free
to use a replacement driver . . . SCI would
determine who would assist me . . .

2.  As to the right of Defendant to discharge me at
will, it was my understanding that I could be
let go from work at any time.

3.  As to my being engaged in a distinct occupation
or business, I do not have my own customers, do
not advertise . . .

4.  With respect to the skills required for my
occupation, I do have some knowledge regarding
general geography, however, I cannot say that I
am any kind of expert . . . Many of the drivers
are "unskilled" . . .

5.  As to the length of time for which my services
were to be performed, I am not aware of
successive contracts based on performance but
rather was employed based on the needs of the
business of Defendant.

6.  As to the method of payment, I was paid by
Defendant through direct deposit . . . in
Burbank . . . In the Inglewood location, I
would receive paychecks.

7.  As to my work for Defendant as part of its
regular business, SCI, which represented to me

in writing that it was in the business of
brokering courier and messengers to various
accounts, including California Overnight.

8.  As to my belief that I was an employee of
    Defendant, I did not accept an offer to become
    an independent contractor after working several
    months in 2007.

9.  As to my opportunity to earn profit or loss on
    my managerial skill, I did not have the ability
    to negotiate my compensation based on bidding
    for jobs.  My compensation was based more on
    how far the deliveries were.  Nor was I allowed
    to work for other delivery companies.

10. As to my use of helpers/replacement, I never
    used such other drivers.  When I was unable to
    work due to illness, the company would simply
    assign my work to other drivers so that I would
    not earn anything on these days.

11. In sum, I was not free to set my own schedule,
    my own business, or my own work, in the manner
    that I deemed most profitable for me, rather, I
    was directed to perform my work as an employee
    in a specific manner, wearing a uniform and
    making periodic reports on my work.

Scott Declaration ¶ 1-11.

For summary judgment purposes, the non-moving
party's facts must be taken as true.  See Real v.
Driscoll Strawberry Associates, Inc., 603 F.2d 748, 755

24

(9th Cir. 1979) ("The appellants' affidavits, which
must be taken as true for summary judgment purposes,
plainly disclose that Driscoll possesses substantial
control over important aspects of the appellants'
work."). If true, these facts asserted in Plaintiff's
Declaration may preclude summary judgment on the issue
of the employer-employee relationship.

However, Plaintiff seems to contradict much of her
earlier deposition testimony in this Declaration.
While the Court is not to consider the weight of
proffered evidence, and is only to consider its
existence, the non-moving party must submit more than a
"mere scintilla of evidence" to support her position.
Anderson v. Liberty Lobby, 477 U.S. 242, 252. Rather,
"there must be evidence on which the jury could
reasonably find for [Plaintiff]." Id. The question
therefore becomes whether these allegations made in the
Declaration are enough for a reasonable jury to find
for Plaintiff on each of her claims, in the face of her
earlier assertions to the contrary.

The Ninth Circuit has held that a non-moving party
to a summary judgment motion cannot create an issue of
fact by creating a contradiction with her own prior
deposition testimony. Radobenko v. Automated Equipment
Corp., 520 F.2d 540, 544 (9th Cir. 1975) (noting that
"if a party who has been examined at length on
deposition could raise an issue of fact simply by
submitting an affidavit contradicting his own prior

testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

However, this rule has its limits. The Ninth Circuit has noted that "the *Foster-Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier testimony." <u>Kennedy v. Allied Mutual Ins. Co.</u>, 952 F.2d 262, 266-67 (9th Cir. 1991). Therefore, before applying the <u>Radobenko</u> rule, the Court must make a factual determination that the contradiction was actually a "sham." <u>Nelson v. City of Davis</u>, 2009 WL 1925909, at *3 (9th Cir. July 7, 2009); <u>Kennedy</u>, 952 F.2d at 267.

In addition, the "sham affidavit" rule does not preclude a non-moving party from "elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition" and that "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." <u>Nelson</u>, 2009 WL 1925909, at *3 (quoting <u>Scamihorn v. Gen. Truck Drivers</u>, 282 F.3d 1078, 1086 n.7 (9th Cir. 2002)).

In this instance, the facts are not minor inconsistencies, but plainly contradict prior testimony at deposition. Plaintiff previously testified as to the belief she was employed by California Overnight, interacted only with California Overnight, had her

rates determined by California Overnight, and various
other statements which connect her only with California
Overnight, and not to Defendant SCI.  The statements
made in the later Declaration flatly contradict these
prior statements and therefore seem to constitute a
"sham affidavit."  Accordingly, the allegations made in
this Declaration should not prevent summary judgment in
favor of Defendant SCI.

III.    Conclusion

        Based on the above the analysis, Defendant's Motion
for Summary Judgment is **GRANTED.**  Plaintiff's
substantive Claims for Relief 1-9 are dismissed on the
basis of the lack of connection between the alleged
violations and Defendant SCI.  Plaintiff has not put
forth evidence showing a connection between the
aggrieved conduct and Defendant SCI, nor has she put
forth sufficient evidence to show a genuine issue of
fact as to whether SCI was Plaintiff's employer.
Because the substantive claims fail, attached Claims
for Relief 10 and 11 fail as well.  The Motion for
Summary Judgment is therefore **GRANTED** in its entirety.


**IT IS SO ORDERED.**


DATED: July 27, 2009


                        / S /
                        _____
                        **HONORABLE RONALD S.W. LEW**
                        Senior, U.S. District Court Judge